## Edward F. Smith

### v.

## Anthony C. Buraczynski and Philip H. Hoff

[214 A.2d 826]

Special Term, November 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed November 18, 1965

*Chapman & MacBride* for plaintiffs.

*Timothy J. O'Connor, Jr.* for defendant Buraczynski.

*Chester S. Ketcham,* Deputy Attorney General, for defendant Hoff.

**Barney, J.** The United States Supreme Court made final and binding a determination that the Vermont General Assembly, as constituted under Sections 13 and 18, Chapter II, of the Vermont Constitution, was so malapportioned as to violate the equal protection clause of the Fourteenth Amendment. *Parsons* v. *Buckley,* 379 U.S. 359, 13 L. ed. 2d 352, 85 S. Ct. 503. Machinery for selecting members of a reapportioned legislature was enacted by the Vermont Legislature elected in 1964 as Nos. 96, 97 and 98 of the Public Acts of 1965:

The plaintiff brings this declaratory action to forestall the holding of elections, now scheduled for November 23, 1965, and intended to bring the reapportioned General Assembly into being. It is his position that the three enactments, reapportioning the Senate, providing

for periodic reapportionment and reapportioning the House, are illegal attempts to amend the Vermont Constitution by ordinary legislative process. The plaintiff concedes that the provisions of Section 68, Chapter II, of the Vermont Constitution are unavailable, because they presuppose the existence of a validly constituted General Assembly for two successive bienniums to make the amending process operative, as well as limiting the presentation of amendments to decennial intervals.

The alternative, he contends, is to provide for a method of adopting reapportionment provisions that has sufficient resort to the will of the people of Vermont generally, as to have constitutional stature. The plaintiff offers authority in support of the use of a constitutional convention, even though not a method expressly authorized in the Vermont Constitution, and says that when the legislature undertook to do the reapportioning itself, rather than turn it over to a constitutional convention, an alternate course authorized by the Federal order, it made the wrong choice.. The chancellor dismissed his petition below, and he now brings his contentions here.

The central issue in this matter is the plaintiff's claim that the actions of the legislative body elected in 1964 relative to reapportionment, being unauthorized by the Vermont constitution, therefore have no validity. His position overlooks a potent source of sanction, referred to in the chancellor's findings, the jurisdiction asserted by the Federal courts.

From August 3, 1964, when a three-judge United States district court, in *Buckley* v. *Hoff*, 234 F. Supp. 191, declared Sections 13 and 18 of Chapter II of the Vermont Constitution, relating to membership in the General Assembly, invalid, Vermont had no constitutional legislature. The legislative body elected in November, 1964, served only at the will of the Federal judiciary. Its election was held under the sanction of the district court, and the powers exercised by that legislature were only those ultimately permitted it by the order of the United States Supreme Court in *Parsons* v. *Buckley*, supra, 379 U.S. 359, 13 L. ed 2d 352, 85 S. Ct. 503.

The 1965 legislature owed its continued existence to federal sovereignty, and drew its *de jure* powers from that source. It was thereby allowed to carry out the functions necessary to implement the governmental operations of the State of Vermont. *Silver* v. *Brown*, 46 Cal. Rptr. 308, 405 P. 2d 132, 140.

Moreover, when this legislature acted on reapportionment, the sole source of its authority came from the judicial branch of the Federal

government, and was unrelated to its own constitutional powers and limitation. This is most clearly demonstrated by the unquestioned fact that, although Nos. 96, 97 and 98 of the Public Acts of 1965 were passed by both houses and signed by the governor in the usual manner of legislative enactments, their final operative effect depended solely on their approval by the United States district court. The content of the acts themselves recognize this. The legislature submitted proposals, but that court, by its order dated June 24, 1965, made them effective. *Buckley* v. *Hoff*, 243 F. Supp. 873. Thus, no issue of legislative incapacity under the Vermont constitution arises.

Even more clearly are the elections themselves under the direct sanction of United States judicial authority. The legislature failed to enact provisions for such an election, so, on July 15, 1965, the United States district court ordered the elections. Reapportionment would itself have been similarly ordered, had the legislature failed to act, according to the terms of the order of the United States Supreme Court in *Parsons* v. *Buckley*, supra, 379 U.S. 359, 13 L.ed. 352, 85 S. Ct. 503.

Recent decisions of the United States Supreme Court have established the existence of standards for the constitutional apportionment of representation in state legislature under the Fourteenth Amendment. *Baker* v. *Carr*, 369 U.S. 186; *Reynolds* v. *Sims*, 377 U.S. 533, 577, 585-6; *WMCA, Inc.* v. *Lomenzo*, 377 U.S. 633, 655. These cases also stand for the proposition that failure to act to resolve malapportionment by the legislative branch of state government supports appropriate judicial intervention. See also, *Mikell* v. *Rousseau*, 123 Vt. 139, 147, 183 A.2d 817; *Silver* v. *Brown*, supra, 46 Cal. Rptr. 308, 405, P.2d 132, 136. We do not understand that this authority is questioned here. Yet it is this authority which supports the reapportionment enactments. *Lucas* v. *Colorado*, 377 U.S. 713, 736-7. Until appropriate constitutional provisions for elections to the General Assembly, valid under the Fourteenth Amendment, are properly enacted, this judicial order and Nos. 96, 97 and 98 of the Public Acts of 1965 will stand in the stead of Sections 13 and 18 of Chapter II of the Vermont Constitution.

Undoubtedly, had the decision of the United States Supreme Court done no more than to declare the legislature as elected under the provisions of the Vermont Constitution an unconstitutional and impotent assembly because malapportioned, the government of the State of Vermont would have been in difficulty. The constitutional impediments pointed out by the plaintiff would have then existed to bar change without judicial intervention, and the State would have been without

any General Assembly at all, with the means of getting one obscure or subject to prolonged postponement. Certainly it could then be said that our people would have been under a greater deprivation of constitutional rights than that produced by malapportionment. This is the basic justification for judicial action, either state or federal, in this area.

Therefore, replacement with a properly constituted General Assembly was essential to a full constitutional solution. The provisions of the order of the United States district court dated July 15, 1965, and ordering the elections, also provides that the term of office of the members of the General Assembly elected at this special election shall expire on the day that their terms of office would have ended, had they been chosen by regular, constitutional elections in 1964. Thus, Sections 35 and 38 of Chapter II of the Vermont Constitution, about which the plaintiff expressed concern, will again be operative in regular order in 1966, with a new General Assembly, presumably properly apportioned, to be elected at that time. See *Hutchinson* v. *Cooley*, 125 Vt., 214 A.2d 828.

The chancellor properly dismissed the petition.

*Decree affirmed.*