# Warren Clark Hutchinson

## v.

## Harry H. Cooley, Secretary of State;

## Robert J. Rousseau, Chittenden County Clerk; and Helen D. Paquin, Town Clerk of the Town of South Burlington

[214 A.2d 828]

November Special Term, 1965

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed November 18, 1965

*Chapman & MacBride* for plaintiff.

*Chester S. Ketcham,* Deputy Attorney General, for defendant Cooley.

*Robert J. Rousseau* pro se.

*Mikel & Stuart* for defendant Paquin.

**Holden, C. J.** The plaintiff was elected to the General Assembly as a member of the House of Representatives from the Town of Rochester at the general election held November 3, 1964. On August 25,

1965, he brought this petition to the Chittenden County Court of Chancery, on the strength of his status as a resident taxpayer and member of the General Assembly, against the Secretary of State, the Chittenden County Clerk and the Town Clerk of South Burlington, in their capacities as election officials. The object of the litigation is to obtain declaratory and injunctive relief against these defendants with the purpose of prohibiting the special election of members of the General Assembly ordered to be held on November 23, 1965.

The plaintiff states his right to equitable relief on Sections 35 and 38, Chapter II of the Constitution of the State of Vermont. "Section. 35. The Governor, Lieutenant-Governor, Treasurer, Secretary of State, Auditor of Accounts, Senators, Town Representatives, Assistant Judges of the County Court, Sheriffs, High Bailiffs, State's Attorneys, Judges of Probate and Justices of the Peace, shall be elected biennially on the first Tuesday next after the first Monday of November, beginning in A.D. 1914."

"Section 38. The term of office of Senators and Town Representatives shall be two years, commencing on the first Wednesday next after the first Monday of January following their election."

The defendant contends that these provisions are not repugnant to the Constitution of the United States. On the strength of these contentions he seeks a declaration that a General Assembly composed of members elected at a time contrary to these provisions would be illegally constituted. The plaintiff seeks a further declaration that the Constitution of the State of Vermont entitles him to hold his office as a member of the General Assembly until January, 1967.

The chancellor adjudged that the plaintiff serves as a member of the General Assembly by order of the United States Supreme Court and only until January, 1966, at which time he will no longer be a representative of the General Assembly. Injunctive relief was denied. This Court was convened in special session in order to hear the plaintiff's appeal prior to November 23, 1965.

The order of the United States Supreme Court referred to in the decree issued January 12, 1965 in *Parsons* v. *Buckley* and *Hoff* v. *Buckley*, 379 U.S. 359, 13 L. Ed. 2d, 352, 355; 85 S. Ct. 503. These cases were before the Supreme Court by way of an appeal from the decision of the District Court in *Buckley* v. *Hoff*, 234 F. Supp. 191 (1964), heard by a three-judge District Court convened under 28 U.S.C. §§2281 and 2284. The complaint before that tribunal challenged the composition of the General Assembly under the applicable

provisions of Sections 13 and 18 of Chapter II of the Vermont Constitution.

The District Court determined both houses of the Vermont General Assembly to be malapportioned. It adjudged both Section 13 and 18 of the Constitution of Vermont to be in controvention of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. By its order of August 3, 1964, elections then scheduled to nominate and elect members of the House of Representatives and Senate were permitted to be held. Members of the General Assembly thus chosen were allowed to convene on January 6, 1965, "provided that election shall be limited to the devising of a constitutional method of reapportionment and redistricting and that the terms of said members shall expire on March 13, 1965." *Buckley* v. *Hoff*, supra, 234, F. Supp. at 196, 200.

The defendants Hoff and Armstrong, in their official capacities as Governor and Secretary of State respectively, appealed in behalf of the State of Vermont from the restraining provisions of paragraph three of the order of the District Court. The Supreme Court noted probable jurisdiction and the cause was set for oral argument.

On January 12, 1965, and before the appeals were heard, the judgment of the District Court was modified and affirmed by the United States Supreme Court. Its per curiam decision recites the holding by the lower court that Sections 13 and 18 of Chapter II of the Constitution of Vermont were invalid under the Fourteenth Amendment and the appellants' appeal to the Supreme Court from Paragraph 3 of the judgment order.

The statement by the Court sets forth that all parties and intervenors in these cases "have now moved this Court to modify the Districts Court's judgment to conform to a Stipulation signed by them and to affirm the judgment of the District Court as so modified." The terms of the stipulation were incorporated. They provide for an extension of the terms of office of the members of the General Assembly from March 13, 1965 to July 1, 1965. The provision of the District Court order, permitting members of the General Assembly to convene on January 6, 1965, was enlarged to empower the General Assembly "to enact all legislation as usual for the operation of the State, town and county governments between January 6, 1965 and July 1, 1965."

The order contained these further provisions which concern the present appeal:

" '(d) If the matter of reapportionment is not referred to a constitutional convention, reapportionment legislation shall be enacted so as to comply with the mandate of the court on or before July 1, 1965.

" '(f) If reapportionment legislation is not enacted by July 1, 1965, and if a constitutional convention shall fail to reapportion the General Assembly by September 1, 1965, the Court shall reapportion the General Assembly so as to comply with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

" '(g) In any event, a reapportioned General Assembly shall have been elected and ready to serve by the first Wednesday after the first Monday in January, 1966.

" '(h) The terms of office of the members to 1965 General Assembly shall expire on July 1, 1965, except that their offices may continue if called into special session by the Governor of the State of Vermont to act upon a State emergency not pertaining to reapportionment.' "

The Legislature enacted statutes which reapportioned the House of Representatives and the Senate and established a plan to accomplish the periodic reapportionment of both houses of the General Assembly. Acts of 1965, No. 96, No. 97 and No. 98. This legislation was subsequently approved by the United States District Court for the District of Vermont. However, the General Assembly adjourned June 30, 1965 without enacting legislation to provide for the nomination and election of a General Assembly to serve in January 1966 as provided in paragraph (g) of the order of the United States Supreme Court.

Acting on a motion presented by the Attorney General in behalf of the Governor and the Secretary of State, the United States District Court issued an order on July 15, 1965, directing that counties and towns hold elections October 19, 1965 and November 23, 1965 to nominate and elect the Senators and Representatives to the General Assembly. The Court decreed that the members of the General Assembly elected at this special election shall be the lawfully constituted legislative body for the State for the period from January 5, 1966 until January, 1967.

The order incorporated and adopted the provisions of No. 98 of the Acts of 1965 relative to the final division of districts as part of its order. Jurisdiction was retained in the event the establishment of districts was not accomplished by August 16, 1965 as provided in the act.

The plaintiff seeks to enjoin the defendant officials from participation in the elections ordered to be held November 23, 1965 on the contention that Sections 35 and 38 of Chapter II of the Vermont Constitution are not contrary to the United States Constitution.

He contends that since Section 35 provides for the election of members of the General Assembly in alternate years beginning in 1914, the election scheduled for the current year offends the Vermont Constitution. He maintains that the Federal Court should have deferred to the state courts before issuing an order contrary to the state constitutional direction. We are referred to the procedural policy expressed in *Harrison* v. *National Association for the Advancement of Colored People*, 360 U.S. 167. 3 L. Ed. 2d, 1152. The plaintiff offers a quotation from the opinion by Chief Justice Warren in *Reynolds* v. *Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 506, 540-

> ". . . that state constitutional provisions should be deemed violative of the Federal Constitution only when validly asserted Constitutional rights could not otherwise be protected and effectuated. Clearly courts should attempt to accommodate the relief ordered to the apportionment provisions of state constitutions insofar as is possible . . ."

The plaintiff would justify our intervention in the impending election on the premise that no federal court has decreed Sections 35 and 38 to be in violation of the Constitution of the United States. Hence he argues this Court has jurisdiction to adjudicate the question and enjoin the elections.

Judge Waterman's opinion in *Buckley* v. *Hoff*, supra, dealt directly with Sections 13, 18 and 68 (the "time-lock" amendment). Yet it is implicit in the order which followed that the District Court considered Sections 35 and 38 not effective to obstruct prompt reapportionment.

The decision in *Reynolds* v. *Sims* did not conclude with the recital above, upon which the plaintiff relies. It goes on to discuss other procedural and remedial considerations which clearly directed the course followed in *Buckley* v. *Hoff*, supra:

> "But it is also quite clear that a state legislative apportionment scheme is no less violative of the Federal Constitution when it is based on state constitutional provisions which have been consistently complied with than when resulting from a noncompliance with state constitutional requirements. When there is an unavoidable

conflict between the Federal and a State Constitution, the Supremacy Clause of course controls.

"We do not consider here the difficult question of the proper remedial devices which federal courts should utilize in state legislative apportionments cases. Remedial technique in this new and developing area of the law will probably often differ with the circumstances of the challenged apportionment and a variety of local conditions. It is enough to say now that, once a State's legislative apportionment scheme . has been found to be unconstitutional it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan."

Unlike the Reynolds case, the Supreme Court did consider the difficult question of the proper remedial devises to be applied to accomplish the reapportionment of the Vermont General Assembly. It gave its express and unanimous approval to the remedy devised by the parties and intervenors, except for Justice Harlan's reservation as to paragraph (f). *Parsons* v. *Buckley*, supra, 13 L. Ed. 2d at 355.

■ In this instance the District Court stayed its hand until the Legislature had been afforded the opportunity to reapportion the General Assembly but the 1965 legislation embodied in No. 96, 97 and 98, failed to take the last and vital step necessary to achieve full compliance. The existing malapportionment which prevailed in the General Assembly of 1965 could be corrected only by establishing election machinery essential to put the legislative scheme into operation and effect. When the Legislature adjourned without such an enactment judicial relief at once became appropriate. *Reynolds* v. *Sims*, supra, 377 U.S. at 586, 12 L. Ed. 2d 506.

■ The power of the judiciary of the State to require valid reapportionment is equally recognized and enforceable. *Scott* v. *Germano*, 381 U. S. 407, 14 L. Ed. 2d, 477, 478. *Maryland* v. *Tawes*, 377 U. S. 656, 12 L. Ed. 2d, 595, 607. This was the basis for retention of jurisdiction by this Court in *Mikell* v. *Rousseau*, 123 Vt., 139, 148, 183 A.2d 817. However, the jurisdiction of the Vermont Courts in the present instance was not invoked until after the rights of the litigants had been finally established and the appropriate relief unalterably settled by the highest tribunal in the land.

The mandate of the Supreme Court, as well as its prior interpretation of the Fourteenth Amendment in *Reynolds* v. *Sims*, constitutes

the supreme law of the land to which all officers of government in the state and nation, as well as the citizens they serve, owe first obedience. *Cooper* v. *Aaron*, 358 U.S. 1, 18, 3 L. Ed. 2d, 5, 78 S. Ct. 1401. And "the laws of the state, though enacted in the exercise of powers not controverted, must yield to it." *Gibbons* v. *Ogden*, 9 Wheat. 1, 211, 6 L. Ed. 23, 73 (Marshall C. J.).

■ If the constitution of a state stands in the way of prompt corrective action designed to achieve compliance with the Federal Constitution the state "must amend it or yield to an authority that is paramount to the state." *Wisconsin* v. *Illinois*, 281 U.S. 179, 194, 74 L. Ed. 799, 804 (Holmes, J.).

The individual claim of the plaintiff to hold office as a representative to the General Assembly for the two years following his taking office in 1965 under the provisions of Section 38, is an unavoidable conflict with the paramount right of freemen of Vermont to equal protection of the laws as established by the Fourteenth Amendment. The plaintiff's effort to halt the impending special elections has no better footing. Compliance with this requirement would result in an equivalent denial of proportionate representation to the people of Vermont for the remainder of the biennium contrary to the guarantee of the United States Constitution.

■ The conflict is temporary to be sure but it will prevail during the remainder of the biennium and for that time there is no room to accommodate these constitutional provisions with the judgment orders of the United States Courts. See *W.M.C.A.* v. *Lomenzo*, decided by United State Supreme Court, October 11, 1965. (Concurring opinion of Justice Harlan).

Insofar as Sections 35 and 38 of Chapter II of the Constitution of Vermont obstruct a "reapportioned General Assembly — elected and ready to serve by the first Wednesday after the first Monday in January 1966," they are suspended. They yield to the paramount authority of the Constitution of the United States as expressed in the order of the Supreme Court of January 12, 1965 and the order of the United States District Court of July 15, 1965.

*The order of the chancellor denying injunctive relief to the plaintiff is affirmed.*