2014 VT 7

# In re S.C., Juvenile

# In re D.S., Juvenile

[88 A.3d 1220]

Nos. 13-278 & 13-311

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed January 10, 2014

*Michael Rose,* St. Albans, for Appellants.

*Matthew F. Valerio,* Defender General, and *Anna Saxman,* Deputy Defender General, Montpelier, for Amicus Curiae Office of Defender General.

*William H. Sorrell,* Attorney General, and *Bridget C. Asay,* Assistant Attorney General, Montpelier, for Amicus Curiae Office of Attorney General.

¶ 1. **Per Curiam.** In each of these appeals from a termination-of-parental-rights judgment, appointed counsel for appellant parent has moved to withdraw on the ground that continued representation is barred by Rule 3.1 of the Vermont Rules of Professional Conduct. The rule provides, in pertinent part, as follows: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of exist-

ing law." We requested and received briefing from counsel, as well as from the Attorney General and Defender General, to address the circumstances, if any, in which such a motion should be granted.* As explained below, we conclude that, absent client consent, a motion to withdraw by appointed appellate counsel in termination proceedings will generally not be granted, and therefore deny the motions.

¶ 2. Appointed counsel is the same in each of these appeals, and the motions are identical, as well, arguing — as noted — that continued representation is ethically precluded by Rule 3.1. In his memorandum in support of the motions, counsel also relies on Vermont Rule of Civil Procedure 11(b)(2), which similarly states that any court submission by an attorney carries an implicit certification that the claims therein "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Counsel states that he reviewed the records in both of the cases on appeal and determined that "there were no issues that had any merit or that, to the extent they had any merit, had the potential of affecting the result." Thus, counsel asserts that withdrawal is "mandatory." Counsel recognizes that the Rules of Professional Conduct allow an attorney to provide continued representation, even where good cause exists for withdrawal, "[w]hen ordered to do so by a tribunal." V.R.Pr.C. 1.16(c). Nevertheless, counsel maintains that being required to raise frivolous claims would unnecessarily tax the resources of this Court and jeopardize the interests of his clients, who would be better served "with substitute counsel who may perceive merit in the case."

¶ 3. The views of the Defender General are largely in accord with those of appointed counsel, although the Defender General observes that his office would be "hard pressed to find" alternative counsel, who would likely reach the same conclusion in any event, thus resulting in unnecessary delay. The Defender General recognizes that other courts in these circumstances have ordered counsel to file an *Anders* brief, based on the U.S. Supreme Court's decision in *Anders v. California*, 386 U.S. 738 (1967). There, to protect the rights of an indigent criminal defendant whose appointed appellate counsel "finds [the] case to be wholly

---

* As explained below, we also requested briefing in *In re S.C.* on the effect, if any, of counsel's inability to contact the client.

frivolous," the high court outlined a procedure in which counsel files a brief advising the court of his or his view that the appeal is frivolous and the reasons therefor, while also citing to "anything in the record that might arguably support the appeal." *Id.* at 744. The court — rather than counsel — then proceeds, after a full examination of the record, to determine whether the case is wholly frivolous and withdrawal is warranted. *Id.* The Defender General opposes this expedient, asserting that it places attorneys in the ethical bind of representing a client while simultaneously outlining the demerits of his or her case.

¶ 4. The Attorney General, for his part, opposes the motions to withdraw, arguing that the significant interests at stake in a termination proceeding require continued representation of a parent on appeal "even if, in a rare case, counsel may be advancing an argument that does not satisfy Rule of Professional Conduct 3.1." The Attorney General relies, as well, on the importance of expediting such appeals; he notes that entertaining withdrawal motions will invariably result in delay and that granting them could produce either protracted pro se litigation or potential collateral challenges based on the lack of representation.

¶ 5. ▉▉ While this Court is appreciative of the difficult and often thankless work undertaken by appointed counsel in termination-of-parental-rights appeals, we nevertheless conclude that the motions to withdraw must be denied. Although the U.S. Supreme Court has not recognized an absolute constitutional right to counsel for indigent parents in termination proceedings, it has acknowledged that a parent's right to the custody, companionship, and care of his or her children is an important interest warranting due process protection, that the interest in a fair and accurate termination decision is "a commanding one," and consequently that the complexity of the proceeding and the "incapacity of the uncounseled parent" may, in a given case, make the risk of an erroneous deprivation "insupportably high." *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27-31 (1981). Consistent with this recognition, Vermont — by statute — has provided for the appointment of counsel to represent needy persons in termination proceedings "when the court deems the interests of justice require representation of either the child or his or her parents or guardian or both, including any subsequent proceedings arising from an order therein." 13 V.S.A. § 5232(3). By administrative order, this Court has also ensured continued representation of

aggrieved parents on appeal, by providing that an appeal from a termination judgment is "not considered a separate proceeding and thus does not require a separate application for the services of appellate counsel at state expense." A.O. 4, § 4(c)(1). Although in theory the appointment of counsel under § 5232(3) thus remains discretionary, in practice counsel are uniformly appointed to represent needy parents in termination proceedings from trial through appeal.

¶ 6. ■ ■ The same concerns that underlie our appointment policy in such matters necessarily inform our consideration of a motion to withdraw. Parents who are extended the right to appointed counsel in "the interests of justice" at trial must be equally assured of meaningful professional assistance on appeal. With the aid of court-appointed counsel, the prosecution of an appeal serves the same important goals — shared by the State and the parent alike — of protecting the parent-child relationship and ensuring a fair and accurate decision that termination of parental rights is in the child's best interests. Allowing the withdrawal of appointed counsel — whatever the relative merits of the underlying termination order — would clearly undermine these goals. We must therefore conclude that, absent client consent or other compelling circumstances, withdrawal of appointed appellate counsel in a termination-of-parental-rights proceeding will not be permitted.

¶ 7. We note that other courts have reached a similar conclusion. In *A.L.L. v. People*, 226 P.3d 1054, 1055 (Colo. 2010), for example, the Colorado Supreme Court considered the responsibilities of court-appointed counsel in dependency proceedings "when their client exercises an appeal by right and yet [they] cannot identify a meritorious legal argument to support their claim for relief." The court held unequivocally that the appointed attorney "has an obligation to advocate on her client's behalf," *id.*, and would not be permitted to "withdraw solely because [he or] she determines the appeal to be without merit." *Id.* at 1063; see also *In re Care & Protection of Valerie*, 529 N.E.2d 146, 147 (Mass. 1988) (holding that appellate counsel in care and protection cases will not be permitted to withdraw on the ground that appeal is frivolous or lacking in merit, but rather should attempt to brief client's contentions "succinctly" in a way that will do the client "the least harm" (quotation omitted)); *In re Hall*, 664 P.2d 1245, 1248 (Wash. 1983) (holding that, "absent client consent, withdrawal of counsel

420

on appeal in a child deprivation proceeding will never be permitted").

¶ 8. While this approach may, in the rare case, require appointed counsel to argue a frivolous claim, the risk is small. Contrary to counsel's suggestion, the assertion of a claim that an attorney believes to be without merit or lacking any meaningful chance of success does not render an appeal "frivolous" or unethical. As the official comment to Rule 3.1 explains, an argument "is not frivolous even though the lawyer believes that the client's position ultimately will not prevail." V.R.Pr.C. 3.1 cmt. [2]; see also *A.L.L.*, 226 P.3d at 1060 (noting that "an utter lack of merit does not render an appeal by right 'wholly frivolous' "); see generally M. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection Is More Equal Than Others*, 23 Fla. St. U. L. Rev. 625, 664 (1996) (observing that "[i]n most cases, it is not ethically necessary for counsel to withdraw since the issues, while not supporting reversal, are not frivolous"). Of course, a lawyer's duty of candor continues to require that he or she "not knowingly . . . make a false statement of fact or law to a tribunal," offer false evidence, or fail to disclose a material fact or controlling legal authority. V.R.Pr.C. 3.3(a). A good faith argument, however, may be predicated on whatever pertinent facts and controlling law are most favorable to the client without violating these duties, and certainly "need not conclude with the lawyer's assertion that [his or] her client is entitled to prevail." *A.L.L.*, 226 P.3d at 1060.

¶ 9. Indeed, even where a meritorious claim is impossible to assert in good faith, the value of the advocate's role to the client, the court, and the system as a whole is realized in this context simply through a conscientious effort to "navigate the appellate process" on the client's behalf and communicate the client's "impressions of injustice," even if unpersuasive. *Id.* at 1060-61; see also *Commonwealth v. Moffett*, 418 N.E.2d 585, 591 (Mass. 1981) (holding that, where a client "insists on pursuing" an unsupported argument, rather than withdrawing or filing *Anders* brief appointed appellate counsel should "present the contention succinctly in the brief in a way that will do the least harm to the [client's] cause"). Any concern that such efforts might nevertheless expose a good faith advocate to charges of unethical conduct may be sufficiently assuaged by noting that even an arguably frivolous

claim will not be deemed to violate Rule 3.1 where, as here, a court categorically refuses to grant motions to withdraw in deference to overriding state interests. See *In re Hall*, 664 P.2d at 1248 ("Where an appellate court refuses to allow appointed counsel to withdraw, arguing even a frivolous appeal does not violate" the Rules of Professional Conduct); see also V.R.Pr.C. 1.16(c) ("When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."); V.R.Pr.C. 3.1, cmt. [3] (noting that, in the context of direct criminal appeals, "[t]he lawyer's obligations under this rule are subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited by this rule").

¶ 10. A final question remains as to whether the circumstances in *In re S.C.* warrant an exception to the general rule precluding withdrawal. In his cover letter to the Court, appointed counsel represented that he had not sent a copy of the withdrawal motion to his client, S.C.'s mother, because he did not have her address, and his attempts to reach her by telephone had failed. Consequently, we requested briefing on "the effect, if any, of counsel's inability to contact the client." Counsel did not, however, rely on his inability to communicate with the client in support of his motion to withdraw. Moreover, counsel has acknowledged in his follow-up memorandum that "communications with the client are not necessary to prosecute" the appeal "since it is based solely on the existing lower court record." Accordingly, we need not here consider whether a motion to withdraw based specifically on appellate counsel's inability to contact or communicate with the client, after diligent efforts, provides a basis for withdrawal.

*The motion to withdraw by appointed counsel in each of these matters is denied.*