2014 VT 7



In re S.C., Juvenile & In re D.S., Juvenile (2013-278
& 2013-311)

 

2014 VT 7

 

[Filed 10-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports. 
Readers are requested to notify the Reporter of Decisions by email at:
JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State
Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections
may be made before this opinion goes to press.

 

 


 2014 VT 7
 
  


 Nos. 2013-278 & 2013-311
 
  


 In re S.C., Juvenile
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Washington Unit,
 
 
  
 
 
 Family Division
 
 
  
 In re D.S., Juvenile
  
 
 
  
 Superior Court, Franklin Unit,
 Family Division
  
 
 
  
 
 
 November Term, 2013
 
 
  
 
 
  
 
  

Michael Rose, St. Albans, for Appellants.

 

Matthew F. Valerio, Defender General, and Anna Saxman, Deputy Defender General,

  Montpelier, for Amicus Curiae
Office of Defender General.

 

William H. Sorrell, Attorney General, and Bridget C. Asay, Assistant Attorney General,

  Montpelier, for Amicus Curiae
Office of Attorney General.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Crawford, JJ.

 

 

¶ 1.           PER CURIAM.   In each of these
appeals from a termination-of-parental-rights judgment, appointed counsel for
appellant parent has moved to withdraw on the ground that continued
representation is barred by Rule 3.1 of the Vermont Rules of Professional
Conduct.  The Rule provides, in pertinent part, as follows: “A lawyer
shall not bring or defend a proceeding, or assert or controvert an issue
therein, unless there is a basis in law and fact for doing so that is not
frivolous, which includes a good faith argument for an extension, modification
or reversal or existing law.”  We requested and received briefing from
counsel, as well as from the Attorney General and Defender General, to address
the circumstances, if any, in which such a motion should be granted.*
 As explained below, we conclude that, absent client consent, a motion to
withdraw by appointed appellate counsel in termination proceedings will
generally not be granted, and therefore deny the motions.

¶ 2.           Appointed
counsel is the same in each of these appeals, and the motions are identical, as
well, arguing—as noted—that continued representation is ethically precluded by
Rule 3.1.  In his memorandum in support of the motions, counsel also
relies on Vermont Rule of Civil Procedure 11(b)(2),
which similarly states that any court submission by an attorney carries an
implicit certification that the claims therein “are warranted by existing law
or by a nonfrivolous argument for the extension,
modification, or reversal of existing law or the establishment of new
law.”  Counsel  states that he reviewed the
records in both of the cases on appeal and determined that “there were no
issues that had any merit or that, to the extent they had any merit, had the
potential of affecting the result.”  Thus, counsel asserts that
withdrawal is “mandatory.”  Counsel recognizes that the Rules of
Professional Conduct allow an attorney to provide continued representation,
even where good cause exists for withdrawal, “[w]hen ordered to do so by a
tribunal.”  V.R.P.C. 1.16(c).  Nevertheless,
counsel maintains that being required to raise frivolous claims would
unnecessarily tax the resources of this Court and jeopardize the interests of
his clients, who would be better served “with substitute counsel who may
perceive merit in the case.”  

¶ 3.           The
views of the Defender General are largely in accord with those of appointed
counsel, although the Defender General observes that his office would be “hard
pressed to find” alternative counsel, who would likely reach the same
conclusion in any event, thus resulting in unnecessary delay.  The
Defender General recognizes that other courts in these circumstances have
ordered counsel to file an Anders brief, based on the U.S. Supreme
Court’s decision in Anders v. California, 386 U.S. 738 (1967). 
There, to protect the rights of an indigent criminal defendant whose appointed
appellate counsel “finds [the] case to be wholly frivolous,” the high court outlined
a procedure in which counsel files a brief advising the court of his or his
view that the appeal is frivolous and the reasons therefor, while also citing
to “anything in the record that might arguably support the appeal.”  Id. at 744.  The court—rather
than counsel—then proceeds, after a full examination of the record, to
determine whether the case is wholly frivolous and withdrawal is warranted. 
Id.  The Defender General opposes this expedient, asserting that it
places attorneys in the ethical bind of representing a client while
simultaneously outlining the demerits of his or her case. 
    

¶ 4.           The
Attorney General, for his part, opposes the motions to withdraw, arguing that
the significant interests at stake in a termination proceeding require
continued representation of a parent on appeal “even if, in a rare case,
counsel may be advancing an argument that does not satisfy Rule of Professional
Conduct 3.1.”  The Attorney General relies, as well, on the importance of
expediting such appeals; he notes that entertaining withdrawal motions will
invariably result in delay and that granting them could produce either
protracted pro se litigation or potential collateral challenges based on the
lack of representation. 

¶ 5.           While
this Court is appreciative of the difficult and often thankless work undertaken
by appointed counsel in termination-of-parental-rights appeals, we nevertheless
conclude that the motions to withdraw must be denied.   Although the
U.S. Supreme Court has not recognized an absolute constitutional right to
counsel for indigent parents in termination proceedings, it has acknowledged
that a parent’s right to the custody, companionship, and care of his or her
children is an important interest warranting due process protection, that the
interest in a fair and accurate termination decision is “a commanding one,” and
consequently that the complexity of the proceeding and the “incapacity of the
uncounseled parent” may, in a given case, make the risk of an erroneous
deprivation “insupportably high.”  Lassiter v. Dep’t of Soc. Servs., 452 U.S. 18, 27-30 (1981).  Consistent
with this recognition, Vermont—by statute—has provided for the appointment of
counsel to represent needy persons in termination proceedings “when the court
deems the interests of justice require representation of either the child or
his or her parents or guardian or both, including any subsequent proceedings
arising from an order therein.”  13 V.S.A. § 5232(3). 
By administrative order, this Court has also ensured continued representation
of aggrieved parents on appeal, by providing that an appeal from a termination
judgment is “not considered a separate proceeding and thus does not require a
separate application for the services of appellate counsel at state
expense.”  A.O. 4, § 4(c)(1).  Although in
theory the appointment of counsel under § 5232(3) thus remains discretionary,
in practice counsel are uniformly appointed to represent needy parents in
termination proceedings from trial through appeal.

¶ 6.           The
same concerns that underlie our appointment policy in such matters
 necessarily inform our consideration of a motion to withdraw.
 Parents who are extended the right to appointed counsel in “the interests
of justice” at trial must be equally assured of meaningful professional
assistance on appeal.  With the aid of court-appointed counsel, the
prosecution of an appeal serves the same important goals—shared by the State
and the parent alike—of protecting the parent-child relationship and ensuring a
fair and accurate decision that termination of parental rights is in the
child’s best interests.  Allowing the withdrawal of appointed
counsel—whatever the relative merits of the underlying termination order—would
clearly undermine these goals.  We must therefore conclude that, absent
client consent or other compelling circumstances, withdrawal of appointed
appellate counsel in a termination-of-parental-rights proceeding will not be
permitted.

¶ 7.           We
note that other courts have reached a similar conclusion.  In A.L.L. & D.Z. v. People, 226 P.3d 1054,
1055 (Colo. 2010), for example, the Colorado Supreme Court considered the
responsibilities of court-appointed counsel in dependency proceedings “when
their client exercises an appeal by right and yet [they] cannot identify a
meritorious legal argument to support their claim for relief.”  The court
held unequivocally that the appointed attorney “has an obligation to advocate
on her client’s behalf,” id., and would not be permitted to “withdraw
solely because [he or] she determines the appeal to be without merit.”  Id.
at 1063; see also In re Care and Protection of Valerie, 529 N.E.2d 146,
147 (Mass. 1988) (holding that appellate counsel in care and protection cases
will not be permitted to withdraw on the ground that appeal is frivolous or
lacking in merit, but rather should attempt to brief client’s contentions
“succinctly” in a way that will do the client “the least harm” (quotation
omitted)); In re Hall, 664 P.2d 1245, 1248 (Wash. 1983) (holding that,
“absent client consent, withdrawal of counsel on appeal in a child deprivation
proceeding will never be permitted”).    

¶ 8.           While
this approach may, in the rare case, require appointed counsel to argue a
frivolous claim, the risk is small.  Contrary to counsel’s suggestion, the
assertion of a claim that an attorney believes to be without merit or lacking
any meaningful chance of success does not render an appeal “frivolous” or
unethical.  As the official comment to Rule 3.1 explains, an argument “is
not frivolous even though the lawyer believes that the client’s position
ultimately will not prevail.”  V.R.P.C. 3.1 cmt. 2; see also A.L.L. & D.Z., 226 P.3d
at 1060 (noting that “an utter lack of merit does not render an appeal by right
‘wholly frivolous’ ”); see generally M. Warner, Anders in the Fifty States:
Some Appellants’ Equal Protection Is More Equal Than Others, 23 Fla. St. U.
L. Rev. 625, 664 (1996) (observing that “[i]n most
cases, it is not ethically necessary for counsel to withdraw since the issues,
while not supporting reversal, are not frivolous”).  Of course, a lawyer’s
duty of candor continues to require that he or she “not knowingly . . . make a
false statement of fact or law to a tribunal,” offer false evidence, or fail to
disclose a material fact or controlling legal authority.  V.R.P.C. 3.3(a).  A good faith argument, however, may
be predicated on whatever pertinent facts and controlling law are most
favorable to the client without violating these duties, and certainly “need not
conclude with the lawyer’s assertion that [his or] her client is entitled to
prevail.”  A.L.L. & D.Z., 226 P.3d at 1060. 


¶ 9.           Indeed,
even where a meritorious claim is impossible to assert in good faith, the value
of the advocate’s role to the client, the court, and the system as a whole is
realized in this context simply through a conscientious effort to “navigate the
appellate process” on the client’s behalf and communicate the client’s
“impressions of injustice,” even if unpersuasive.  Id. at 1060-61;
see also Commonwealth v. Moffett, 418 N.E.2d 585, 591 (Mass. 1981)
(holding that, where a client “insists on pursuing” an unsupported argument,
rather than withdrawing or filing Anders brief appointed appellate
counsel should “present the contention succinctly in the brief in a way that
will do the least harm to the [client’s] cause”).  Any concern that such
efforts might nevertheless expose a good faith advocate to charges of unethical
conduct may be sufficiently assuaged by noting that even an arguably frivolous
claim will not be deemed to violate Rule 3.1 where, as here, a court
categorically refuses to grant motions to withdraw in deference to overriding state
interests.  See In re Hall, 664 P.2d at 1248 (“Where an appellate
court refuses to allow appointed counsel to withdraw, arguing even a frivolous
appeal does not violate” the Rules of Professional Conduct); see also V.R.P.C.
1.16(c) (“When ordered to do so by a tribunal, a lawyer shall continue
representation notwithstanding good cause for terminating the
representation.”); V.R.P.C. 3.1, cmt. 3 (noting that,
in the context of direct criminal appeals, “[t]he lawyer’s obligations under
this rule are subordinate to federal or state constitutional law that entitles
a defendant in a criminal matter to the assistance of counsel in presenting a
claim or contention that otherwise would be prohibited by this rule”). 
 

¶ 10.       A final question
remains as to whether the circumstances in In re S.C. warrant an
exception to the general rule precluding withdrawal.  In his cover letter
to the Court, appointed counsel represented that he had not sent a copy of the
withdrawal motion to his client, S.C.’s mother, because he did not have her
address, and his attempts to reach her by telephone had failed. 
Consequently, we requested briefing on the “the effect, if any, of counsel’s
inability to contact the client.”  Counsel did not, however, rely on his
inability to communicate with the client in support of his motion to withdraw.
 Moreover, counsel has acknowledged in his follow-up memorandum that
“communications with the client are not necessary to prosecute” the appeal
“since it is based solely on the existing lower court record.” 
Accordingly, we need not here consider whether a motion to withdraw based
specifically on appellate counsel’s inability to contact or communicate with
the client, after diligent efforts, provides a basis for withdrawal. 

The motion to
withdraw by appointed counsel in each of these matters is denied.    


 


  
 
 
  
 
 
 BY THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Paul L. Reiber,
 Chief Justice
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 John A. Dooley, Associate
 Justice
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Marilyn S. Skoglund, Associate Justice 
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Beth Robinson, Associate
 Justice
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Geoffrey W. Crawford,
 Associate Justice
 
 
  
 
 
  
 
 
  
 
  

 











*  As explained
below, we also requested briefing in In re S.C. on the effect, if any,
of counsel’s inability to contact the client.